IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NAACP-GREENSBORO BRANCH,      )
MYRA ANN SLONE, and           )
R. STEVE BOWDEN,              )
                             )
        Plaintiffs,          )
                             )
        v.                   )      1:12CV111
                             )
THE GUILFORD COUNTY BOARD     )
OF ELECTIONS, THOM TILLIS in  )
his official capacity as      )
Speaker of the North Carolina )
House of Representatives;      )
PHILIP E. BERGER in his       )
official capacity as          )
President Pro Tempore of       )
the North Carolina Senate;     )
and THE STATE OF NORTH         )
CAROLINA,                     )
                             )
        Defendants.          )

**<u>MEMORANDUM OPINION</u>**


On February 7, 2012, Plaintiffs filed a Motion for a
Preliminary Injunction (Doc. 12), seeking an interim remedy for
alleged constitutional infirmities in North Carolina Session Law
2011-407 ("SL 2011-407"). Plaintiffs filed a brief in support of
this motion (Doc. 13), Defendants filed a brief in opposition
(Doc. 20), and Plaintiffs filed a reply brief (Doc. 23). The
parties appeared before this court on February 17, 2012, to
present oral argument. At that hearing, the parties fully
addressed the merits of Plaintiffs' Motion for a Preliminary
Injunction (Doc. 12), and this court granted Plaintiffs' motion

and stated that a memorandum opinion was forthcoming. This memorandum opinion sets forth the court's reasoning for granting Plaintiffs' Motion for a Preliminary Injunction. On February 24, 2012, this court entered an order (Doc. 36) setting forth an interim remedy, which is also described below.[1]

## I. Background

On July 28, 2011, the North Carolina General Assembly passed SL 2011-407, reducing the Guilford County Board of Commissioners from eleven to nine members and redrawing the district lines of Guilford County. See generally SL 2011-407. NAACP-Greensboro Branch, Myra Ann Slone, and R. Steve Bowden ("Plaintiffs") filed a complaint against the Guilford County Board of Elections, Thom Tillis, in his official capacity as Speaker of the North Carolina House of Representatives, Philip E. Berger, in his official capacity as President Pro Tempore of the North Carolina Senate, and the State of North Carolina ("Defendants") alleging that SL 2011-407 violates the Equal Protection Clause of the United States Constitution (Compl. (Doc. 1) at 7) and of Article I, § 19 of the North Carolina Constitution (id. at 8).

Plaintiffs filed a Motion for a Temporary Restraining Order ("TRO") (Doc. 9), a Motion for a Preliminary Injunction (Doc.

---

[1] At the preliminary injunction hearing, this court instructed the parties to file briefs proposing appropriate remedies. Plaintiffs and Defendants filed these briefs (Docs. 28 and 27, respectively), and the court held a hearing on the issue of an appropriate remedy on February 22, 2012.

12), and a Motion for Summary Judgment (Doc. 14). Plaintiffs
requested that this court issue the TRO prior to the opening of
the filing period for elections for the Guilford County Board of
Commissioners, which was scheduled to occur on February 13, 2012.
(Pls.' Mem. Supp. Mot. TRO (Doc. 10) at 1.) Because this court
did not find that Plaintiffs would be irreparably harmed by
delaying any ruling until the issues could be fully briefed, this
court denied Plaintiffs' Motion for a TRO without prejudice.
After reviewing the parties' briefs (Docs. 13, 20, and 23), this
court heard oral argument regarding Plaintiffs' Motion for a
Preliminary Injunction on February 17, 2012, and found
preliminary relief to be warranted. This memorandum opinion more
fully sets out this court's rationale for granting Plaintiffs'
motion and for its decision as to an appropriate remedy.

Article VII, § 1 of the North Carolina Constitution states,

> The General Assembly shall provide for the
> organization and government and the fixing of
> boundaries of counties, cities and towns, and
> other governmental subdivisions, and, except
> as otherwise prohibited by this Constitution,
> may give such powers and duties to counties,
> cities and towns, and other governmental
> subdivisions as it may deem advisable.

Accordingly, any power held by a county government exists solely
by permission of the legislature and may be revoked by the
General Assembly at any time. The North Carolina Supreme Court
has noted that counties are "subject practically to the unlimited
control of the legislature, unless restricted by constitutional

provision" and that county commissioners have "no vested property or contract right to the office to which they had been elected of which they could not be deprived by the legislature." O'Neal v. Jennette, 190 N.C. 96, 99, 129 S.E. 184, 185-86 (1925); see also Ramsey v. Rollins, 246 N.C. 647, 651, 100 S.E.2d 55, 57 (1957); Comm'rs of Dare Cnty. v. Comm'rs of Currituck Cnty., 95 N.C. 189, 192 (1886) (stating that counties "are always subject to legislative control, and their powers may be abolished, enlarged, abridged, or modified").

From 1991 to 2011, elections for the Guilford County Board of Commissioners were governed by North Carolina Session Law 1991-136 ("SL 1991-136").[2] Under this session law, the Board of Commissioners consisted of eleven members, nine commissioners from single-member districts and two at-large commissioners. See SL 1991-136, § 1.(a). According to all of the parties, after the 2010 census, the General Assembly determined that the Guilford County district lines needed to be redrawn to account for changes in population distribution. The General Assembly then passed North Carolina Session Law 2011-172 ("SL 2011-172"), which repealed SL 1991-136, shrank the Board from eleven to nine commissioners, and granted authority to the Board of Commissioners to create a redistricting plan that met certain

---

[2] North Carolina Session Law 1993-521 reenacted and made technical amendments to SL 1991-136.

outlined requirements.  <u>See</u> SL 2011-172.  A little over a month later, however, the General Assembly adopted SL 2011-407, which repealed SL 1991-136, as reenacted by SL 1993-521, and SL 2011-172.  Only Section 3 of SL 2011-407 is applicable to Guilford County and challenged in this case.  It states, in part,[3] as follows:

> SECTION 3.(a)  Chapter 136, Session Laws of 1991, as reenacted by Section 1 of Chapter 521, Session Laws of 1993, is repealed.
>
> SECTION 3.(b)  Chapter 172, Session Laws of 2011, is repealed.
>
> SECTION 3.(c)   Effective on the first Monday of December 2012, the Board of Commissioners of Guilford County shall consist of nine members.   The members shall be elected on a partisan basis at the time of the regular county primary and general elections.  One member shall be elected from each of eight single-member districts established under subsection (f) of this section. One member shall be elected at large from within the entirety of Guilford County.
>
> SECTION 3.(d)  In 2012 and quadrennially thereafter, members for Districts 4, 5, 7, and 8 shall be elected for four-year terms. In 2014 and quadrennially thereafter, members for Districts 1, 2, 3, and 6 and the at-large member shall be elected for four-year terms.
>
> SECTION 3.(e)  The qualified voters of each district shall elect the member of the board for that district. Candidates must reside in the district for which they seek to be elected.

---

[3] Section 3.(f), which lists the new districts (undisputed by the parties), has been omitted for the sake of brevity.

SECTION 3.(g)   Following the return of the
2020 census, and each census thereafter, the
Guilford County Board of Commissioners may
revise the election districts.

SECTION 3.(h)   Notwithstanding Part 4 of
Article 4 of Chapter 153A of the General
Statutes, the structure of the Guilford
County Board of Commissioners shall not be
altered under that Part prior to July 1,
2017.

SECTION 3.(i)  The Guilford County
Commissioners shall submit the changes
required by this act to  the U.S. Department
of Justice pursuant to section 5 of the
Voting Rights Act of 1965.

SL 2011-407, § 3.

SL 2011-407 creates a Guilford County Board of Commissioners comprised of eight commissioners from single-member districts and one at-large commissioner.[4]  Under a single-member district electoral scheme, constituents are represented by a single commissioner whom they can hold directly accountable.  <u>See Stephenson v. Bartlett</u>, 355 N.C. 354, 379-80, 562 S.E.2d 377, 394-95 (2002).  The benefits of such a scheme have been recognized at both the state and federal level, indeed, "federal law expressly requires that states use single-member districts in reapportioning their congressional representation."  <u>Id.</u> at 377 n.5 (<u>citing</u> 2 U.S.C. § 2(c) (2000); <u>Whitcomb v. Chavis</u>, 403 U.S. 124, 158-59 n.39 (1971)).

---

[4] SL 1991-136 and SL 2011-172 also created a Board of
Commissioners composed of both commissioners from single-member
districts and at-large commissioners.

Additionally, like SL 2011-172, SL 2011-407 reduces the Board of Commissioners from eleven to nine members. Unlike SL 2011-172, however, it repeals the Board's authority to redraw the district lines and instead explicitly establishes the district lines itself. <u>See</u> SL 2011-407, § 3.(b) and § 3.(f). Section 3.(c) states:

> Effective on the first Monday of December 2012, the Board of Commissioners of Guilford County shall consist of nine members. The members shall be elected on a partisan basis at the time of the regular county primary and general elections. One member shall be elected from each of eight single-member districts established under subsection (f) of this section. One member shall be elected at large from within the entirety of Guilford County.

The Guilford County Board of Commissioners currently consists of eleven members whose terms expire as follows:

| District 1: | Bruce Davis | (2014) |
|---|---|---|
| District 2: | Ben Bencini | (2014) |
| District 3: | Linda Shaw | (2014) |
| District 4: | Kirk Perkins | (2012) |
| District 5: | Billy Yow | (2012) |
| District 6: | Kay Cashion | (2014) |
| District 7: | Mike Winstead | (2012) |
| District 8: | Melvin Alston | (2012) |
| District 9: | Carolyn Coleman | (2014) |
| At-Large: | Paul Gibson | (2012) |
| At-Large: | John Parks | (2012) |

SL 2011-407 also provides for staggered elections, with commissioners from new districts 4, 5, 7, and 8 being elected in 2012 for four-year terms, and commissioners from new districts 1, 2, 3, and 6 and an at-large commissioner being elected in 2014

for four-year terms.  SL 2011-407, § 3.(d).

## II. The Parties' Interpretations of SL 2011-407

During the course of this litigation, the parties have offered various interpretations of SL 2011-407 in an attempt to reconcile the plain language of Sections 3.(c) and 3.(d) with what the parties argue to have been the legislature's intent.

As noted above, Section 3.(c) states, "Effective on the first Monday of December 2012. . . .  One member shall be elected from each of eight single-member districts established under subsection (f) of this section.  One member shall be elected at large."  Section 3.(d) then institutes staggered elections by providing that, in 2012, elections will only be held for new districts 4, 5, 7, and 8.  Thus, while one subsection clearly provides for a nine-member Board beginning in December 2012, the subsequent section only provides for the election of commissioners from four of the new single-member districts.  The General Assembly did not remedy this incongruity by specifying whether incumbent commissioners, who were elected pursuant to SL 1991-136 and whose terms do not expire until 2014, will continue to serve on the Board and, if so, in what capacity.

Both Plaintiffs and Defendants contend that SL 2011-407 does not cut short the unexpired term of any incumbent commissioner. They argue that the legislature's intent to allow incumbent commissioners to remain in office can be gleaned from Section

8

3.(c), which provides that, beginning in December 2012, the Board

of Commissioners shall consist of nine members.  Because Section

3.(d) only provides for the election of four commissioners in

2012, the parties argue that the legislature implicitly left

intact the terms of the incumbent commissioners through the 2014

election in order to have a full nine-member Board after the 2012

general election.  Additionally, Section 3.(d) provides for

elections for commissioners in new Districts 4, 5, 7, and 8 in

2012, the year in which the terms of the commissioners in former

Districts 4, 5, 7, and 8 expire.  Section 3.(d) also provides for

elections for commissioners in new Districts 1, 2, 3, and 6 in

2014, the year in which the terms of the commissioners in former

Districts 1, 2, 3, and 6 expire.

    For the limited purpose of this preliminary injunction order

only, this court finds that the intent of the legislature, to the

extent it may be determined from the statutory language, was not

to terminate the unexpired term of any incumbent commissioner.

In reaching this conclusion, this court finds the arguments of

the Guilford County Attorney, Mark Payne, to be particularly

persuasive.[5]  Mr. Payne interprets SL 2011-407 as having

_____

[5] While this court recognizes that it has the responsibility to
determine the law, in light of Mr. Payne's position as legal
counsel for the county, advising the county about complying with
the laws of the legislature, this court affords substantial
weight to his interpretation of legislative intent at this
preliminary stage of the proceedings.  See Jones v. Madison Cnty.
Comm'rs, 137 N.C. 579, 50 S.E. 291, 297 (1905) ("In the exercise

abolished the former districts created by SL 1991-136 but not the offices in which the incumbent commissioners serve. Therefore, in adopting this interpretation, this court finds an intent on the part of the legislature to allow incumbent commissioners to fulfill the remainder of their terms in office.

Although this court finds, for purposes of this order only, that the legislature intended for incumbent commissioners to serve out their terms, this court is unable to ascertain any legislative intent as to which district each incumbent commissioner will represent after the 2012 election. Nothing in SL 2011-407 designates any incumbent commissioner elected in 2010 as the representative of any of the new districts promulgated by SL 2011-407. This lack of guidance proves a stark contrast to prior legislation governing Guilford County elections. For example, SL 1991-136, § 1.(b) expressly appointed incumbent commissioners to particular districts in order to phase-in a new staggered election scheme.[6]

---

of ordinary governmental functions, [counties] are simply agencies of the state, constituted for the convenience of local administration in certain portions of the state's territory; and, in the exercise of such functions, they are subject to almost unlimited legislative control, except where this power is restricted by constitutional provisions."); N.C.G.S. 153A-144.

[6] SL 1991-136, § 1.(b) reads, in pertinent part:

> W. Dean Dull who was elected in 1990 for a four-year term is designated as the member from District 1 until the first Monday in December of 1994. Steve Arnold who was

In light of this legislative silence, the parties disagree as to what capacity the incumbent commissioners will serve following the 2012 general election.  Plaintiffs argue that in December 2012 any incumbent commissioner will become a commissioner for the new district in which he or she resides. Defendants, however, argue that the five incumbent commissioners will not serve any particular district but instead will serve Guilford County as a whole until the 2014 election.[7]  Defendants apparently arrive at this position because SL 2011-407 abolished the former districts from which the incumbent commissioners were elected and no provision of SL 2011-407 appoints the incumbent commissioners to serve any particular new district.

Notwithstanding the parties' respective positions, however, they agree that under SL 2011-407, new District 6 will not have a single-member district commissioner between the 2012 and 2014 general elections.  As discussed below, this lack of representation creates a substantial constitutional concern.

---

elected in 1990 for a four-year term is designated as the member from District 2 until the first Monday in December of 1994. Katie Dorsett who was elected in 1990 for a four-year term is designated as the member from District 9 until the first Monday in December of 1994.

[7] Under the County Attorney's interpretation, all incumbent commissioners are "resident commissioners" who do not currently serve any particular district.

Furthermore, this "anomaly"[8] has evidently been apparent to the North Carolina General Assembly, which has not addressed the problem. (See Letter from Susan Nichols, Special Deputy Attorney General for the North Carolina Department of Justice, to Anita Earls, Southern Coalition for Social Justice (February 2, 2012) (Doc. 15-1) ("Our clients do not anticipate taking any action with respect to SL 2011-407 before the end of the candidate filing period on February 29, 2012.").)

## III. Motion for a Preliminary Injunction

"A preliminary injunction is an extraordinary remedy afforded prior to trial" that temporarily provides "the relief that can be granted permanently after trial." Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 345 (4th Cir. 2009), vacated on other grounds, ___ U.S. ___, 130 S.Ct. 2371 (2010). To obtain a preliminary injunction, a plaintiff "must establish '[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'"

---

[8] See Letter from Susan Nichols, Special Deputy Attorney General for the North Carolina Department of Justice, to Gary Bartlett, Executive Director for the State Board of Elections (January 26, 2012) (Doc. 1, Ex. 2) (explaining that questions had arisen when the county attorney and the Guilford County Board of Elections had concluded that the Board of Elections lacked authority "to remedy some anomalies in the legislation [SL 2011-407] with apparently unanticipated consequences").

Id. at 346 (quoting Winter v. Nat. Res. Def. Council, Inc., 555
U.S. 7, 20 (2008)).  This court will address each of the
requirements for a preliminary injunction in turn.

**A. Likelihood of Success on the Merits**

In order to meet the requirements for a preliminary
injunction, Plaintiffs must establish that they are likely to
succeed on the merits.  In the present case, Plaintiffs allege
that SL 2011-407 violates the Equal Protection Clause of the
Fourteenth Amendment to the United States Constitution (Compl.
(Doc. 1) at 7) and of Article I, § 19 of the North Carolina
Constitution (id. at 8).[9]  Plaintiffs do not directly contest the
new district lines, which have been approved by the General
Assembly and the Department of Justice.  Instead, they note that
the new district lines, which drew certain commissioners out of
their former districts, when combined with the election schedule
contemplated by SL 2011-407, leaves some citizens under-
represented and other citizens over-represented between the 2012

_____

[9] The Equal Protection Clause of the United States Constitution
sets the minimum standard of constitutional protection.  See
State v. Jackson, 348 N.C. 644, 648, 503 S.E.2d 101, 103 (1998)
("[T]he United States Constitution provides a constitutional
floor of fundamental rights guaranteed all citizens of the United
States, while the state constitutions frequently give citizens of
individual states basic rights in addition to those guaranteed by
the United States Constitution.").  Therefore, a violation of the
federal Equal Protection Clause also constitutes a violation of
the Equal Protection Clause of Article I, § 19 of the North
Carolina Constitution.

13

and 2014 general elections.  (Pls.' Reply Br. Supp. Mot. Prelim.
Inj. (Doc. 23) at 8-9.)

In Reynolds v. Sims, the Supreme Court acknowledged that
"the fundamental principle of representative government in this
country is one of equal representation for equal numbers of
people, without regard to race, sex, economic status, or place of
residence within a State."[10]  377 U.S. 533, 560-61 (1964).  The
Court clarified that "the right of suffrage can be denied by a
debasement or dilution of the weight of a citizen's vote just as
effectively as by wholly prohibiting the free exercise of the
franchise."  Id. at 555.

The protections of the Equal Protection Clause extend to
local government.  In Avery v. Midland County, 390 U.S. 474, 479
(1968), the Supreme Court explained, "The Equal Protection Clause
reaches the exercise of state power however manifested, whether
exercised directly or through subdivisions of the State."  Id. at

---

[10] In Gray v. Sanders, 372 U.S. 368, 379 (1963), the Supreme Court
reasoned,

> How then can one person be given twice or ten times the
> voting power of another person in a statewide election
> merely because he lives in a rural area or because he
> lives in the smallest rural county?  Once the
> geographical unit for which a representative is to be
> chosen is designated, all who participate in the
> election are to have an equal vote - whatever their
> race, whatever their sex, whatever their occupation,
> whatever their income, and wherever their home may be
> in that geographical unit.  This is required by the
> Equal Protection Clause of the Fourteenth Amendment.

479-80 ("[W]hen the State delegates lawmaking power to local government and provides for the election of local officials from districts specified by statute, ordinance, or local charter, it must insure that those qualified to vote have the right to an equally effective voice in the election process."); see Vander Linden v. Hodges, 193 F.3d 268, 272 (4th Cir. 1999). Neither party disputes that the members of the Guilford County Board of Commissioners are individuals selected by popular election to perform governmental functions. Therefore, the Equal Protection Clause applies.

In Daley v. Hunt, 93 F.3d 1212, 1216 (4th Cir. 1996), the Fourth Circuit explained that the equal protection guarantee of "one person, one vote"[11] "also ensures that every person receives equal representation by his or her elected officials." Id. at 1226 (explaining that elected representatives "should represent roughly the same number of constituents, so that each person, whether or not they are entitled to vote, receives a fair share of the governmental power, through his or her representative"). "[W]hen all of the aspects of equal representation are considered as a whole, it becomes clear that representational equality is at

---

[11] In Gray v. Sanders, 372 U.S. at 381, the Supreme Court explained, "The conception of political equality from the Declaration of Independence, to Lincoln's Gettysburg Address, to the Fifteenth, Seventeenth, and Nineteenth Amendments can mean only one thing - one person, one vote."

least as important as electoral equality in a representative democracy." Id. at 1226-27.

In Avens v. Wright, a three-judge panel held in part that "[d]ual representation for one Washington County magisterial district offends, however, [] the equal protection clause of the Fourteenth Amendment." 320 F.Supp. 677, 680-81 (W.D.Va. 1970). The court explained:

> Six of the seven Washington County districts are represented by one supervisor but Harrison District, which has approximately the same population as the others, is represented by two. This dual representation appears to have occurred because the newly apportioned Harrison District embraced the residences of two of the incumbent supervisors. Consequently, a person in Harrison District has twice the representation of citizens living elsewhere in the county.

Id. at 686. The three-judge panel concluded, "This inequality violates the equal protection clause." Id.

In Burdick v. Takushi, the Supreme Court explained,

> A court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

504 U.S. 428, 434 (1992) (quoting Anderson v. Celebrezze, 460 U.S. 780, 789 (1983)). In Locklear v. North Carolina State Bd.

16

of Elections, 514 F.2d 1152 (4th Cir. 1975), the Fourth Circuit applied strict scrutiny when examining whether the dilution of the voting rights of some of the electorate violated the Equal Protection Clause. Id. at 1154-56 (citing Kramer v. Union Free Sch. Dist. No. 15, 395 U.S. 621 (1969)). The Fourth Circuit explained, "There can be no doubt that, unless the state can adduce a compelling justification, the votes of the residents of the county school board geographical area are unconstitutionally diluted," concluding, "Thus we conceive the legal question to confront us to be whether a compelling state interest justifies permitting the residents of city school units to participate in the election of . . . the county school board. If not, the franchise is constitutionally over-inclusive." Locklear, 514 F.2d at 1154. This court therefore applies strict scrutiny in its examination of the constitutionality of SL 2011-407.

Plaintiffs interpret SL 2011-407 to mean that, beginning in December 2012, districts will be established according to the new plan, with any incumbent commissioners representing the new districts in which they reside. Plaintiffs' construction of SL 2011-407 leaves the residents of new District 6 without a commissioner between the December 2012 and 2014 elections and may leave two districts, new Districts 3 and 7, with two commissioners during this two year period. See Daly, 93 F.3d at 1222 ("[T]he purpose of redistricting is not only to protect the

17

voting power of citizens; a coequal goal is to ensure 'equal representation for equal numbers of people.'") (quoting Garza v. Cnty. of Los Angeles, 918 F.2d 763, 775 (9th Cir. 1990) (quoting Kirkpatrick v. Preisler, 394 U.S. 526, 531 (1969))).  New District 6's lack of representation on the Board of Commissioners violates the assurances of the Equal Protection Clause that "every person receives equal representation by his or her elected officials."  Daley, 93 F.3d at 1216.  These residents will have, not just unequal representation, but no representation on the Board of Commissioners between the 2012 and 2014 general elections.  Additionally, under Plaintiffs' interpretation of SL 2011-407, the double representation of new Districts 3 and 7 would thereby dilute the representation of the other districts. See Reynolds, 377 U.S. at 566 ("Diluting the weight of votes because of place of residence impairs basic constitutional rights under the Fourteenth Amendment just as much as invidious discriminations based upon factors such as race.").  This court is not able to discern a compelling state interest that would permit this type of dilution of the representation of some citizens of Guilford County between the 2012 and 2014 general elections.

Defendants' interpretation of SL 2011-407 raises similar problems of diluted and absent representation.  Like Plaintiffs, Defendants argue that the new districts will come into effect in

December 2012, although the incumbent commissioners will continue
to serve out their terms through the 2014 election.   In
Defendants' brief, however, they argue:

> Ms. Coleman was not elected from District 7
> and Ms. Cashion was not elected from new
> District 3.   Thus, they cannot be deemed
> representatives of either of these new
> districts. . . .   Nothing in S.L. 2011-407
> assigned or appointed Ms. Coleman to serve as
> a representative for new District 7 or Ms.
> Cashion to serve as a representative for new
> Districts 3 or 6.

(Doc. 20 at 18.)   During oral argument regarding Plaintiffs'
motion for a preliminary injunction, County Attorney Mark Payne
explained that, with the passage of SL 2011-407, all of the
commissioners were transformed into "resident" commissioners, in
effect commissioners without portfolios, who represent Guilford
County as a whole although they were elected from their former
districts.   Under this interpretation, after the 2012 election
only the residents of new Districts 4, 5, 7, and 8 will have
commissioners for their particular single-member districts and
new Districts 1, 2, 3, and 6 will have no representative
commissioner for their particular district.   This interpretation
presents problems of both under and over-representation on the
Guilford County Board of Commissioners.   At a minimum,
Defendants' interpretation of SL 2011-407, like Plaintiffs'
interpretation, leaves at least the residents of new District 6

without any representative commissioner from their single-member district from the 2012 election until the 2014 election.

Defendants attempt to downplay new District 6's lack of representation by arguing that the vast majority of the residents of that district had the opportunity to vote for a commissioner who will serve on the Board through the 2014 election. This argument, however, appears to substitute the right to vote for a commissioner with the right to equal representation on the Board of Commissioners, a proposition for which this court has found no authority. The majority of new District 6 overlaps with former District 2, and the residents of former District 2 elected Bill Bencini to the Board of Commissioners in the 2010 election. This does not detract from or cure the constitutional problem, however, created by the fact that Mr. Bencini, whom those residents voted for, will not be representing new District 6 during this two-year period. Additionally, voters in two of the nineteen precincts in new District 6 had no opportunity to vote for a commissioner in the 2010 election and will not have an opportunity to vote until the 2014 elections. (Doc. 20 at 6.) Thus, these voters (5,702 registered voters) will not have a commissioner for their single-member district, and there will be no commissioner on the Board for whom they had the opportunity to vote.

Under any of the above constructions, this court finds that Plaintiffs have established a likelihood of success on the merits. Because of the electoral structure contemplated by SL 2011-407, between December 2012 and December 2014 residents of Guilford County will have unequal representation on the Board of Commissioners from the established single-member districts based solely on the geographic location of their residences, violating those residents' equal protection rights.[12]

### B. Likelihood of Irreparable Harm

The second requirement for a preliminary injunction is that Plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief. The Supreme Court has clarified that "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." Winter, 55 U.S. at 22 (emphasis in original).

Although constitutional violations do not per se constitute irreparable harm, courts have found irreparable harm when monetary damages are inadequate to compensate a plaintiff. A Helping Hand, LLC v. Baltimore Cnty., MD, 355 Fed.Appx. 773, 776-77 (4th Cir. 2009) (unpublished). Here, Plaintiffs have not

---

[12] Even under a rational basis analysis, this court would reach the same result. Although it might be rational for the legislature to desire to permit incumbent commissioners to serve out their terms, it is not rational to do so by diluting or entirely eliminating the representation of some residents of Guilford County on the Board of Commissioners for a two-year period.

requested money damages, and money cannot adequately compensate Plaintiffs for unequal representation on the Guilford County Board of Commissioners. See Legend Night Club v. Miller, 637 F.3d 291, 302 (4th Cir. 2011). Under either Plaintiffs' or Defendants' interpretation of SL 2011-407, the residents in new District 6 will not be represented by a commissioner between the 2012 and 2014 elections.

Furthermore, the North Carolina legislature has not acted and apparently cannot act until the election cycle is well under way. In Republican Party of North Carolina v. Hunt, a North Carolina district court explained,

> Should the interim relief that plaintiffs now request be denied and plaintiffs ultimately prevail on the merits at trial, plaintiffs will endure unnecessary harm due to the unavailability of prompt relief at that time. . . . A victory on the merits by plaintiffs would require the court either to nullify the elections that had already taken place and thereafter order new elections at considerable cost and time to the public and to all involved, or to bring the campaigns then in process to a staggering halt.

841 F.Supp. 722, 728 (E.D.N.C. 1994). This court therefore finds that Plaintiffs have met their burden of showing a likelihood of irreparable harm if their motion for a preliminary injunction is not granted.

## C. Balance of the Equities

According to Defendants, the balance of the equities is not in Plaintiffs' favor because ample time remains available "for

any alleged constitutional injury . . . to be remedied by the
Board of Commissioners pursuant to the current statutory
authority, by the General Assembly, or by the Court." (Defs.'
Br. Opp'n Req. Prelim. Inj. (Doc. 20) at 15.)  Defendants
specifically argue that "the General Assembly also has the
opportunity to remedy any alleged or potential violation, by
amending SL 2011-407, when it convenes in May 2012." (Id. at
14.)  If a constitutional injury exists, however, waiting until
May for the General Assembly to remedy the situation would likely
result in the same voter confusion, wasted candidate efforts and
expenditures, needlessly spent tax dollars, and possible low
voter turnout that Defendants argue would result from a
preliminary injunction.[13]  (Id. at 15-16.)

_____

[13] Defendants' arguments amount to a claim that Plaintiffs'
action is not ripe for review.  To determine whether a case is
ripe, "we balance the fitness of the issues for judicial decision
with the hardship to the parties of withholding court
consideration.  A case is fit for judicial decision when the
issues are purely legal and when the action in controversy is
final and not dependent on future uncertainties."  Miller v.
Brown, 462 F.3d 312, 319 (4th Cir. 2006) (internal quotation
marks and citations omitted).  "The hardship prong is measured by
the immediacy of the threat and the burden imposed on the
[plaintiffs] who would be compelled to act under threat of
enforcement of the challenged law.  When considering hardship, we
may consider the cost to the parties of delaying judicial
review."  Id.
    The issues before this court are purely legal and are not
dependent on future uncertainties.  While Defendants claim that
the General Assembly could step in and resolve the issue prior to
the general election, thus making the issue unfit for review at
this time, this court notes that this argument could be made any
time reapportionment is challenged.  Courts could refrain from
acting simply because the legislature could choose to act at a

23

In the context of reapportionment cases, the Supreme Court, in <u>Reynolds v. Sims</u>, explained:

> [O]nce a State's legislative apportionment scheme has been found to be unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan. However, under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid.

<u>Reynolds</u>, 377 U.S. at 585. This court finds that no "unusual" equitable considerations exist in this case because:

1) Plaintiffs have not unduly delayed bringing suit and 2) this case does not involve the arduous task of reapportionment and redrawing district lines.

This court also finds the circumstances in this case to be distinguishable from those in <u>Maryland Citizens for a Representative Gen. Assembly v. Governor of Maryland</u>, 429 F.2d

---

later time. Furthermore, it is not clear that any such later action by the General Assembly would not itself cause harm to Plaintiffs. As Defendants note, "The injuries resulting from the interruption of ongoing elections are also widespread. Voters are confused. Candidates suffer from wasted efforts and expenditures. Tax dollars are spent needlessly." (Defs.' Br. Opp'n Req. Prelim. Inj. (Doc. 20) at 15-16.) These potential injuries, which could result from delayed resolution of the issues presented by SL 2011-407, at least as to new District 6, would serve as a hardship for the parties. This court thus finds Plaintiffs' claims to be ripe for resolution.

606 (4th Cir. 1970) and Simkins v. Gressette, 631 F.2d 287 (4th

Cir. 1980), both of which affirmed a district court's refusal to

convene a three-judge panel because it found injunctive relief to

be unavailable.  In Maryland Citizens, the Fourth Circuit

affirmed a district court's finding that injunctive relief was

unavailable when the plaintiffs delayed challenging a

reapportionment plan for approximately five years after it had

been adopted, filing their complaint "only thirteen weeks prior

to the filing deadline," when finding the statute ineffective

would have required the "time-consuming process" of developing a

new reapportionment plan (that "could not have been expected [to

be completed] until close upon the eve of the [filing]

deadline"), and when a census that same year would require yet

another reapportionment.  Maryland Citizens, 429 F.2d at 608-610

(expressing concerns about potential instability from

"reapportioning with undue frequency").  In Simkins, the Fourth

Circuit also affirmed a district court's finding that injunctive

relief was unavailable when the plaintiffs delayed challenging a

reapportionment plan for approximately eight years after the

South Carolina senate had adopted it, waiting until two days

before the filing period opened, and a census that same year

would likely require another reapportionment yet again.  Simkins,

631 F.2d at 296; see also Smith v. Beasley, 946 F.Supp. 1174,

1212 (D.S.C. 1996) (refusing to grant a preliminary injunction to

give time to redraw statewide district lines when primary elections had already been held, the state's election machinery was "already in place," candidates had already spent significant time and money campaigning, voters had begun "to familiarize themselves with the candidates," and the general election was approximately six weeks away).

As stated above, however, this court finds that the present suit proves distinguishable in several ways. First, although Defendants assert the defense of laches, in this case Plaintiffs did not unduly delay bringing suit and filed for a preliminary injunction approximately six months after the enactment of SL 2011-407 and approximately three months after its preclearance (Doc. 20 at 2), in contrast to the plaintiffs in Maryland Citizens and Simkins who waited for years before challenging the reapportionment plans at issue. Although Plaintiffs did not file their motion for a preliminary injunction until approximately six days before the filing period for the office of Guilford County Commissioner was scheduled to open,[14] they had been in

_____

[14] In Republican Party of North Carolina v. Hunt, a North Carolina district court explained the different contexts in which the same motion for a preliminary injunction had been brought. The first motion, which was denied, was filed

> well after the candidacy filing period,
> shortly after the districtwide primaries, and
> just months before the scheduled [] general
> statewide election. The proximity of that
> impending election, the considerable reliance
> candidates already had placed on the existing
> electoral process and the considerable

communication with the State Board of Elections and the Attorney General's office during this period. (See Letter from Susan Nichols, Special Deputy Attorney General for the North Carolina Department of Justice, to Anita Earls, Southern Coalition for Social Justice (February 2, 2012) (Doc. 15-1).) In light of Plaintiffs' attempts to seek legislative action or find an alternate remedy before filing for a preliminary injunction, they have not exhibited a lack of diligence in bringing this suit.

---

> disruption to a nearly completed electoral cycle that would have resulted from court intervention figured significantly into the court's evaluation of the likelihood of harm to the defendants if the requested relief were granted.

Hunt, 841 F.Supp. at 727. In contrast, the second motion for a preliminary injunction, which was filed prior to the inception of the election process, provided the court with "the opportunity to effectively remedy any defect(s) it may perceive in the electoral process prior to significant and potentially detrimental reliance on the present electoral scheme by defendants and potential candidates." Id. at 727. The court issued its opinion on January 3, 1994, and the filing period for candidates began on the second Monday in February and ended on the last business day in February preceding the primary. Id.; N.C. Gen. Stat. § 163-106(c). Here, this court recognizes that Plaintiffs' suit falls somewhere in between the two scenarios in Hunt. The suit was brought immediately prior to the opening of the filing period and this injunction was granted one week into the filing period. The electoral process, however, has not been "nearly completed." In Hunt, the court explained that "[s]ufficient time [remained] available for compliance with the preclearance requirements of the Voting Rights Act." Id. at 729. Here the Department of Justice has already pre-cleared the new districts in SL 2011-407 (Defs.' Br. Opp'n Req. Prelim. Inj. (Doc. 20) at 1) and sufficient time remains to permit the election of a new District 6 commissioner during the 2012 general election.

Second, this case does not involve a "time-consuming" or complex reapportionment. Both parties agree that the lines of the new districts are not in dispute and have been approved by the General Assembly and the Department of Justice. Thus, the Fourth Circuit's concerns with the time-consuming nature of a remedy and the instability of unduly frequent reapportionment is inapplicable. Maryland Citizens, 429 F.2d at 610. The problems presented by SL 2011-407 are limited to clarifying which commissioners will run for election in what districts in the December 2012 election and ensuring that the districts have equal representation between the 2012 and 2014 elections.

In light of the reasons expressed above and Plaintiffs' rights to equal representation on the Guilford County Board of Commissioners, this court finds that the balance of the equities tips in Plaintiffs' favor.

**D.  Public Interest**

Finally, this court examines whether granting this preliminary injunction is in the public interest. Plaintiffs argue that the public interest would be served through granting a preliminary injunction because of the public's interest in "the integrity of our representative form of government." (Doc. 13 at 17 (quoting Cook v. Luckett, 575 F. Supp. 479, 485 (S.D. Miss. 1983), vacated on other grounds, 753 F.2d 912 (5th Cir. 1984)).) Defendants, however, argue that granting the preliminary

injunction is not in the public interest because interrupting an ongoing election may cause voter confusion and low voter turn-out, needless expense, and other widespread injuries. Defendants' various arguments for why a preliminary injunction would not be in the public interest, however, simply serve to emphasize why a preliminary injunction during these early stages of the filing period would better serve the public than waiting until the eve of the election.

This court finds that the public interest in an election and a Board of Commissioners that complies with the constitutional requirements of the Equal Protection Clause is served by granting a preliminary injunction in this case. See Legend Night Club, 637 F.3d at 303 ("[U]pholding constitutional rights is in the public interest."); Hunt, 841 F.Supp. at 732 ("[P]ublic interest requires the furtherance of the constitutional protections that attach to the franchise.").

## IV. Remedy

During the course of this litigation, both parties have proffered remedies for the equal protection problems this court has identified in SL 2011-407. Neither party, however, has addressed the fact that SL 2011-407 may present other, substantial constitutional issues under the Due Process Clause. The statute as written appears to be incomplete and may, therefore, be unconstitutionally vague, see Connally v. Gen.

Constr. Co., 269 U.S. 385, 391 (1926), or it may be an
unconstitutional delegation of legislative authority in that it
fails to specify the structure for the Board of Commissioners
beginning in December 2012.  See Mistretta v. U.S., 488 U.S. 361,
371 (1989); Legend Night Club, 637 F.3d at 302 (explaining that
"like the Supreme Court we [the Fourth Circuit] are wary of
legislatures who would rely on our intervention [to fix a
statute]," which would, "to some extent, substitute the judicial
for the legislative department of the government") (internal
quotation marks omitted) (quoting United States v. Reese, 92 U.S.
214, 221 (1876)).  Neither party has raised these issues as
claims or as factors in establishing a remedy; however, these
issues will be fully addressed before this court enters a final
judgment in this case.  Nevertheless, in light of the issues as
currently presented by the parties, this court finds that a
remedy, limited in scope, is appropriate.

    Plaintiffs' proposed remedy requires the court to take the
following steps: 1) place new District 6 up for election in 2012,
2) delay the election in new District 7 until 2014, and 3)
delegate to the Board of County Commissioners the authority to
designate one of the two incumbent commissioners residing in new
District 3 to serve as the at-large commissioner through the
remainder of her term.  These actions, however, require the court
to write into SL 2011-407 a provision that the legislature failed

30

to include and would involve policy choices this court is unable to make at this stage of the proceedings in the absence of clear legislative intent. Additionally, by granting the Board of Commissioners the authority to appoint one of the two commissioners currently residing in new District 3 to the at-large seat, this court could actually be acting contrary to the apparent intent of the legislature. The General Assembly, in revoking SL 2011-172, repealed the Board of Commissioners' power with regard to structuring elections.

Defendants contend that this court should adopt the remedy presented as part of the parties' proposed settlement agreement. That plan would require placing all nine seats up for election in 2012. It would allow for staggered terms by providing that some of the commissioners elected in 2012 would serve two-year terms before facing re-election, while others would serve four-year terms. This court, however, has no guidance for how to designate who should serve two-year terms and who should serve four-year terms. If it adopted Defendants' remedy, this court would also have to cut short the terms of incumbent commissioners, which could ultimately prove contrary to the intent of the General Assembly.

Neither Plaintiffs nor Defendants present sufficient evidence to warrant full, permanent, and mandatory relief at this stage of the litigation. "Mandatory preliminary injunctive

relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances." Taylor v. Freeman, 34 F.3d 266, 270 n.2 (4th Cir. 1994). "Mandatory preliminary injunctions [generally] do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 526 (4th Cir. 2003) (internal quotation marks and citations omitted), abrogation on other grounds recognized in Bethesda Softworks, LLC v. Interplay Entm't Corp., No. 11-1860, 2011 WL 5084587, at *2 (4th Cir. Oct. 26, 2011). "That is to say, a mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind." Id.

Applying those same standards to the parties' arguments, this court finds that a narrowly-tailored, mandatory remedy is appropriate in this instance. This court finds, based on the arguments of the parties and for purposes of this order only, that the apparent legislative intent was to allow incumbent commissioners to finish out their terms and elect new commissioners through a general election in November 2012. This court also finds that the absence of a commissioner in new District 6 likely violates the Equal Protection Clause. Without

32

injunctive relief, the residents of new District 6 will be irreparably harmed by the lack of representation for their district on the Guilford County Board of Commissioners, a harm caused by the election schedule established by SL 2011-407.[15]

Accordingly, this court will order that the general election of Guilford County Commissioners proceed pursuant to SL 2011-407 upon the terms and conditions set forth in that statute. Sections 3.(a), (b), (c), (e), (f), (g), (h), and (i) shall remain in full force and effect. The schedule of elections contained in Section 3.(d) is enjoined. In lieu of the schedule specified in Section 3.(d), the election schedule for 2012 is revised to provide for the election of a commissioner for new District 6 and to stay the election of a commissioner for new District 7 as follows:

> In 2012, members shall be elected for Districts 4, 5, 6, and 8. The election of a member for District 7 is hereby stayed until further order of this court.

This remedy is appropriate for the following reasons. First, ordering the election of a new District 6 commissioner in the 2012 general election: 1) remedies the lack of representation

---

[15] The North Carolina Constitution disqualifies from elected office "any person who is not qualified to vote in an election for that office." N.C. Const. Art. VI, § 8. The legislature has not and appears unlikely to remove the residency requirements for voting for county commissioners from single-member districts, and no incumbent commissioner currently resides in new District 6 whom might be appointed to the position of commissioner for new District 6.

on the Board of Commissioners for the residents of new District 6 between the 2012 and 2014 general elections, and 2) complies with the apparent legislative intent that commissioners serve staggered terms. Second, staying the election of a new District 7 commissioner: 1) preserves the legislature's chosen number of seats (four) elected in the 2012 general election, and 2) prevents the election of a second single-member district commissioner who resides in new District 7. Third, the legislature cannot order this remedy when it meets because at that point insufficient time would remain to hold a regularly-scheduled primary and possibly even the November general election. Fourth, this remedy is limited in scope and does not prevent the legislature from establishing its own remedy, whether by special election, appointment power, or any other manner it finds appropriate. Finally, this remedy preserves this court's power to enter final, ultimate relief on the merits, if required. In re Microsoft Corp. Antitrust Litig., 333 F.3d at 526.

This court recognizes that this remedy still leaves at least two issues unresolved: 1) the role of the two commissioners currently residing in new District 3, and 2) whether the currently serving commissioners are to remain as single-member district representatives between the 2012 and 2014 general elections. These matters are not appropriately addressed as part of preliminary injunctive relief as there is no threat of

irreparable harm in the absence of injunctive relief. Although this court has considered ordering a stay of the entire election until the legislature remedied the due process and equal protection concerns in SL 2011-407, counsel for the Legislative Defendants has assured this court during various oral arguments that the legislature will move to address any constitutional problems with SL 2011-407 at the earliest possible date. Because reapportionment is a legislative matter, see Reynolds, 377 U.S. at 586 ("[L]egislative reapportionment is primarily a matter for legislative consideration and determination, and [] judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so."), this court finds that further action in Plaintiffs' motion for a preliminary injunction is not appropriate and should be denied.

An order consistent with this opinion was entered on February 24, 2012.

This the 14th day of March 2012.

William L. Osteen, Jr.
United States District Judge